# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| NICK COLEMAN, AKA NICKY COLEMAN<br>    LA. DOC # 328980 | CIVIL ACTION NO. 3:10-cv-0740 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| WARDEN TIM WILKINSON | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Nick Coleman, also known as Nicky Coleman, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on April 24, 2010.[1]  Doc. # 1.  Petitioner,  an inmate in the custody of Louisiana's Department of Public Safety and Corrections,  attacks his 2006 distribution of cocaine conviction and the fifteen year hard labor sentence imposed by the Fourth Judicial District Court, Ouachita Parish, following his adjudication as a second felony offender. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the petition  be **DENIED** and **DISMISSED WITH PREJUDICE.**

## BACKGROUND

On February 22, 2006, petitioner was convicted of distribution of cocaine following a one-day trial in the Fourth Judicial District Court.  He pled guilty as a second offender and was sentenced to serve 15 years at hard labor.  Doc. #1, ¶3.  Petitioner appealed his conviction to the Second Circuit

---

[1] Petitioner signed his petition on April 24, 2010 [Doc. 1, p. 9]; it was mailed on April 30, 2010 [*id.*, p. 11] and received and filed on May 3, 2010. In accordance with the "mailbox rule," the date of signing is the earliest date upon which petitioner's pleadings could be said to have been filed.  See *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, (1988).

Court of Appeals raising a single claim for relief: "The trial court erred in denying his *Batson*[2] challenge to the state's use of a peremptory challenge against Betty Hudson, a black prospective juror..."  On January 24, 2007, his conviction was affirmed.  *State of Louisiana v. Nicky Lavelle Coleman*, 41,764 (La. App. 2 Cir. 1/24/2007), 949 So.2d 570.  His application for writs was denied by the Louisiana Supreme Court on October 12, 2007.  *State of Louisiana v. Nicky Lavelle Coleman*, 2007-0459 (La. 10/12/2007), 965 So.2d 398.  He did not seek further direct review in the United States Supreme Court.[3]

On May 15, 2008, he filed an application for post-conviction relief in the Fourth Judicial District Court.  Doc. #5, pp. 4-5.  The District Court denied relief on July 30, 2008.  Doc. #10, p. 6. Petitioner sought further review in the Second Circuit Court of Appeals in a writ application filed in that court on April 13, 2009.  On May 7, 2009, his writ application was denied because petitioner "... failed to bear his burden of proving that the district court erred in denying his post-conviction relief application."  *See State of Louisiana v. Nick Coleman*, No. 44,644-KH at Doc. #10, p. 7.  He mailed his writ application to the Louisiana Supreme Court on June 4, 2009.  Doc. #10, p. 4.  On April 9, 2010, the Louisiana Supreme Court denied relief.  *State of Louisiana ex rel. Nick Coleman v. State of Louisiana*, 2009-1454 (La. 4/9/2010), 31 So.3d 384.

Petitioner filed his federal *habeas* petition on April 24, 2010.   Doc. # 1.  He argues the following claims for relief: (1) purposeful racial discrimination in striking a potential juror; (2)

---

[2] The U.S. Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race.

[3] Petitioner implies that he sought review in the United States Supreme Court, however, the information he supplied in his petition relates to litigation in the Louisiana Supreme Court and not the United States Supreme Court. Doc. #1, ¶6(D).  Additionally, the presumptively reliable published jurisprudence of the United States Supreme Court indicates that petitioner did not seek review in the Supreme Court.

ineffective assistance of trial counsel when counsel failed to obtain discovery from the State; (3) suppression of favorable evidence; and (4) insufficient evidence to establish that petitioner was the perpetrator of the crime. Doc. # 1, ¶ 5.

The underlying facts in this case have been set forth by the Second Circuit of the Louisiana Court of Appeal, as follows:

> On January 18, 2005, a "buy/bust" operation was conducted by Lieutenant Mike Rowlan and Sergeant Jay Ellerman of the Ouachita Parish Sheriff's Office. They equipped an informant with an audio recording device and $60 in photocopied money. They then followed the informant in a surveillance vehicle which was equipped with a video camera. The defendant met the informant at the intersection of 11th and Adams Street in Monroe. The defendant sold $60 worth of cocaine to the informant as the deputies watched and recorded the conversation from about two blocks away. The defendant was immediately arrested.

> The defendant was charged with distribution of cocaine. Following a jury trial, he was convicted as charged. The state filed a multiple offender bill in which it alleged that the defendant was a fourth felony offender. Pursuant to a plea bargain, the defendant entered a plea of guilty to being a second felony offender. He was sentenced to 15 years at hard labor without benefit of parole, probation or suspension of sentence. His motion for reconsideration was denied.

*State v. Coleman*, 41,764 (La. App. 2d Cir. 1/24/2007) 949 So.2d 570, 572.

## LAW AND ANALYSIS

### I.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II.     Plaintiff's *Batson* Challenge

As his first ground for *habeas corpus* relief, Coleman argues that, at his trial held on February 22, 2006, there was "purposeful discrimination by the state in striking a potential juror implausible race - neutral reason [*sic*]." Doc. # 1, ¶ 5A. Plaintiff's memorandum submitted in support of his *habeas* motion is silent as to any law or argument in support of this claim, although he attaches pages of the brief submitted on his behalf to the Second Circuit Court of Appeal. *See* Doc. # 1-2, pp. 30-38. Plaintiff expounds on this claim in his reply memorandum, *see* Doc. # 18.

Plaintiff, an African-American, thus claims that the state trial court erred when it overruled his *Batson* challenge. *Batson* requires defendants to demonstrate that the State used

peremptory challenges in violation of the Equal Protection Clause.  *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986).  Since *Batson* is clearly established Supreme Court precedent, *Hernandez v. Lamarque*, 295 Fed.Appx. 235, 237 (Ninth Cir. Oct. 1, 2008), under 28 U.S.C. § 2254(d)(2), Coleman must demonstrate that the trial court's decision in not finding a *Batson* violation was either contrary to or involved an unreasonable application of *Batson*.

In *Batson*, the Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge.  *Id.* at 96-98.  First, "a defendant must make a *prima facie* showing that the prosecutor exercised his peremptory challenges on the basis of race."  *Id.* at 96.  Second, "[o]nce the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation" for the use of the peremptory challenge.  *Id.* at 97.  Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination."  *Id.* at 98.

In order to establish a *prima facie* case under *Batson*, a defendant: (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire; (2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that the facts and circumstances of the state's use of peremptory challenges raise an inference that the prosecutor exercised peremptory challenges on the basis of race.  *Price v. Cain*, 560 F.3d 284, 286-87 (5th Cir. 2009).

The *prima facie* showing required by *Batson* "is not so onerous that a defendant would have to persuade the judge - on the basis of all the facts, some of which are impossible for the defendant to know with certainty - that the challenge was more likely than not the product of purposeful discrimination."  *Johnson v. California*, 545 U.S. 162, 170 (2005).  Indeed, a

5

defendant satisfies *Batson's* first step by merely "producing evidence sufficient to permit the trial

judge to draw an inference that discrimination has occurred."  *Id.*

      In order to demonstrate that the "facts and circumstances" of the state's use of peremptory

challenges would permit the trial judge to draw an inference of racial discrimination, the

defendant must 'come forward with facts, not just numbers alone.'" *United States v. Branch*, 989

F.2d 752, 755 (5th Cir. 1993) (citing *United States v. Moore*, 895 F.2d 484, 485 (8th Cir. 1990)).

Moreover, "neither the total exclusion of a cognizable group from the jury nor the mere presence

of one or two perhaps token members of the group on the jury is dispositive of whether the prima

facie requirement is satisfied."  *Smith v. Cain*, No. 08-698, 2009 U.S. Dist. LEXIS 71152, at *34

(M.D. La. June 19, 2009) (Riedlinger, J.)  "Factors that give rise to an inference of discrimination

include, among others, a pattern of strikes against jurors of a certain race and the prosecutor's

statements and questions during voir dire." *Brown v. Kinney*, 237 F.3d 556, 561 (5th Cir. 2001).

Finally, in this circuit, a trial court's finding that a party has failed to make the necessary prima

facie showing for purposes of *Batson* is accorded a "presumption of correctness, which can only

be rebutted by clear and convincing evidence."  *Soria v. Johnson*, 207 F.3d 232, 238 (5th Cir.

2000).

      Coleman's court-appointed counsel, George W. Britton, III, initially attempted to

establish a *prima facie* case under *Batson* by pointing out that the state accepted three and

excused six black jurors.  (R. 316).  The trial court, with the Honorable Dennis Waldron

presiding, while not expressly ruling on whether Coleman made out a *prima facie* showing of

purposeful discrimination, nevertheless proceeded to the second step of a *Batson* challenge,[4]

---

[4] The Supreme Court of Louisiana has held that a trial court's demand that the state justify its use of peremptory strikes is akin to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose, thus making out a *prima facie* case of purposeful discrimination.  *State v. Green*, 94-0887

requiring the state to give its reasons for excusing the six black prospective jurors.[5]  As outlined by the Second Circuit Court of Appeal:

> The reasons for the dismissal of five of these prospective black jurors were as follows: (1) a female had previously served on a criminal jury that acquitted; (2) a female had previously served on a acquitting jury and was a former client of defense counsel; (3) a female had a criminal conviction; (4) a male had a domestic abuse charge; and (5) a male gave answers about the use of informants and the burden of proof which led the state to unsuccessfully challenge him for cause.

*State v. Coleman*, 949 So.2d 574.

It is the sixth black prospective juror, Ms. Betty Hutson, that provides the basis for Coleman's *Batson* argument in the case herein (as well as in his appeal to the Second Circuit). Ms. Hutson was dismissed for her "'very quick answer' to a hypothetical question" posed by Attorney Britton concerning the possibility of an innocent person being wrongfully convicted. (R. 320-21).  Specifically, Attorney Britton asked the jury whether they believed that a defendant charged with driving under the influence could be found guilty where the evidence only established that the defendant was intoxicated while standing near his vehicle with his keys in his hand.  (R. 247).  Without pondering the question for any period of time, Ms. Hutson stated conclusively, "Yes, sir.  It can." *Id.*  Attorney John Pham, representing the state, expressed concern that Ms. Hutson "appeared open to the belief that, despite a standard of guilty beyond a reasonable doubt, she could be placed in the position of convicting an innocent person." *State v. Coleman*, 949 So.2d 574.  Attorney Pham further noted that he was less concerned about the other prospective jurors who gave similar answers, because they took the time to consider their answers and inquire as to other evidence in the hypothetical. *Id.*

---

(La. 5/22/1995) 655 So.2d 272, 288.

[5] The state exercised eight of its 12 peremptory challenges; two of them were used against white prospective jurors.  The defense peremptorily challenged 12 prospective jurors, one of whom was black and 11 of whom were white.  949 So.2d 574 n.2.

In a *Batson* challenge, step three automatically follows step two. *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001). The third and final step of *Batson* requires a court to determine the "decisive question" of "whether a proffered race-neutral explanation should be believed" or whether it is pretext for discrimination. *Id.* at 572. In assessing this question, the court engages in a "comparative analysis" of the reasons the state proffered for exercising peremptory challenges against black jurors with the state's treatment of white jurors, even if petitioner does not provide the court with a comparative analysis of his own. *Reed v. Quarterman*, 555 F.3d 364, 373 (5th Cir. 2009). Under this analysis, "if the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, that is evidence that the asserted justification was a pretext for discrimination." *Id.* at 375.

Coleman argues that the state's use of a peremptory challenge against Ms. Hutson was pretextual and "constituted intentional discrimination" because the state accepted "white jurors who disclosed conflicting obligations that appear[] to have been at least as serious as Ms. Hutson." Doc. # 18, p. 3. However, a review of the hearing indicates that Coleman cannot establish purposeful discrimination against Ms. Hutson.

Judge Waldron questioned Attorney Pham as to why other jurors, both black and white, were accepted even though they too believed that "an innocent person could be found guilty" in Attorney Britton's hypothetical. (R. 322-24). Attorney Pham responded that he felt the other jurors "looked at other evidence" and "considered" the hypothetical in a manner that "didn't give [Attorney Pham] as much concern." *Id.* The Second Circuit Court of Appeal noted the comparable answers of the white prospective jurors as follows:

The defendant argues that the answers of white prospective jurors Christina

Stewart, James Gilbert, and Amy Sittner were comparable to those of Ms. Hutson, yet the state did not excuse them.  We note that Mr. Gilbert was released by the court due to a family medical emergency; consequently, the defense cannot credibly rely on the fact that the state did not exercise a peremptory strike against him when it had no such opportunity.  When asked the same question as Ms. Hutson about an innocent person being convicted, Ms. Steward stated that she "believe[d] it could happen."  She also stated that she would want proof and that she would go with the judge's instructions.  When it was her turn, Ms. Sittner stated, "If he wasn't driving, I don't believe that he would be convicted of driving while intoxicated."  Only upon further questioning was Ms. Sittner willing to admit that some people convicted of crimes have later been exonerated by scientific developments which aid in the analysis of the evidence.

State v. Coleman, 949 So.2d at 575.

After hearing from both Attorney Pham and Attorney Britton on the dismissal of Ms. Hutson, Judge Waldron allowed the jury panel to stand, noting Coleman's *Batson* objection "to protect the defendant."[6]  (R. 328-30).

The Second Circuit Court of Appeal discerned that while the differences in juror's responses were not "startling distinctions," such responses are to be considered "in light of the fact that this court does not have the benefit of witnessing the prospective juror's demeanor during *voir dire*."  *State v. Coleman*, 949 So.2d at 575.  A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless

---

[6] Shortly before opening statements, Judge Waldron accepted the jury panel as follows:

I will allow the panel to stand.  I have reviewed the record of each of the persons who have been challenged.  I've listened to what has been said and I have no reason to believe at this time that there should be any action taken by the Court to reinstate anyone who was peremptorily excused.  I don't mean in any way to make light of the decisions that have to be made in this regard by myself or any other judge.  I have not been reluctant in the past to find in very limited situations I'm happy to report, where this is even raised.  But I have not been reluctant to find that a jury should be reinstated either for a *Batson* violation or a so-called reverse *Batson* violation.  But in passing, I always note or like to note and do note here that this process is so very difficult for a Court to exercise and to look into the minds of people that you trust on both sides as officers of the court not to violate this particular rule, nor any other rule of law under which we operate...I respect the right of each of you to raise it, just as I respect and demand of you that you raise any issue that you think is relevant.  I note the objection to protect the defendant.

they are clearly erroneous.  *Hernandez v. New York*, 500 U.S. 532, 111 S.Ct. 1859 (1991).  The trial court is in a position to observe firsthand the demeanor of the attorneys and the venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the *voir dire* that simply cannot be replicated from a cold transcript.  *State v. Juniors*, 2003-2425 (La. 6/29/2005) 915 So.2d 291, cert. denied, 126 S.Ct. 1940.

Under the third prong of *Batson*, the finding of an absence of discriminatory intent is based upon whether the trial court found the race-neutral explanation offered by the state credible.  Here, Judge Waldon was in the best position to gage the prosecutor's intentions for challenging Ms. Hutson.  There is nothing in the record to show that the trial court abused its discretion in making its determination that the state's race-neutral explanation for challenging Ms. Hutson was credible.  Plaintiff Coleman thus fails to make a showing of purposeful discrimination.

## III.   Ineffective Assistance of Counsel

### A.      Standard

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions

"fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  There is a

strong presumption that counsel performed adequately and exercised reasonable professional

judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).  Furthermore, "a conscious and

informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness." *Id.*

To prove prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome" and is less than a preponderance of the evidence.  *Id.* at 693-94.

### B.        Petitioner's Claims

Plaintiff argues that he was denied effective assistance of counsel because he was taken

"to trial with unanswered pretrial discovery motions that both the trial court and state district

attorney [were] aware of."  Doc. # 1, ¶ 5B.  In his memorandum in support of the underlying

motion, Coleman expounds on his ineffective assistance of counsel claim, alleging that Attorney

Britton was "unresponsive" to plaintiff's numerous attempts to speak with him concerning the

case.  Doc. # 1-2, p. 2.  Coleman further argues that Attorney Britton was ineffective when he

failed to obtain discovery from the state.  *See* Doc. # 1-2, pp. 19-26.

Specifically, Coleman contends that Attorney Britton's ineffectiveness is demonstrated by

the fact that Coleman was not provided a copy of his "rap sheet."  Therefore, plaintiff continues,

he was unaware of the State's "intent" and was unable to "prepare [his] defense accordingly."

Doc. # 1-2.  Had a "rap sheet" been provided to Coleman, he would have "possibly enter[ed] or

[accepted] the plea offer, instead of pursuing a trial."  *Id.*  A review of the record reveals that a

11

plea offer was indeed available to Coleman prior to his trial.  At a preliminary hearing held on December 14, 2005, Attorney Britton stated that a plea offer had been extended to Coleman, "which he rejected." (R. 16).  After questioning by Judge Waldron, Coleman voiced his desire to reject the plea deal.  *Id.*  It was also at this hearing that the District Attorney's office notified the court that they intended to charge Coleman as a repeat offender.  *Id.*  Therefore, regardless of whether Coleman had any copy of his "rap sheet," he was on notice well before his trial that the state intended to charge him as a repeat offender.

Further, Coleman would not have needed a copy of his rap sheet to know of the state's "intent" in charging him as a multiple offender, as he is the individual who was thrice convicted of drug offenses (and presents no argument to the contrary herein).  (R. 001).  The record further illustrates that, on March 27, 2006, a hearing was held on the "multiple bill of information" filed by Attorney Pham.  (R. 444).  Coleman at first declined to plead guilty "as a second offender under the so-called multiple bill of information."  *Id.*  Attorney Pham informed the court that he was willing to extend the amount of time Coleman had to accept this offer, because, as he noted, if Coleman was sentenced as a fourth offender, "it will be a life sentence." (R. 445).  After conferring with his counsel, Mr. Britton, Coleman agreed to plead guilty to being a second offender, thus resulting in his fifteen-year sentence.  (R. 447).  There is no evidence that Attorney Britton's alleged failure to present Coleman with a copy of his "rap sheet" impeded or otherwise prejudiced Coleman's defense.

Coleman brings forth no evidence or factual allegations to support a claim that Attorney Britton's performance either fell below an objective standard of reasonableness, or that petitioner was prejudiced as a result.  The record portrays Attorney Britton as a competent attorney who zealously advocated for his client.  Attorney Britton filed several pretrial motions, including

motions for discovery and inspection, a motion for preliminary examination and motion to reduce bond.  Attorney Britton also vigorously cross-examined all witnesses put on by the state. (R. 335-45; 347; 369-81).  As mentioned *supra*, Attorney Britton preserved Coleman's *Batson* objection, insuring the issue could be brought on appeal.  With regard to Coleman's claim that discovery was withheld from him (discussed in further detail *infra*), and that this failure was somehow the fault of Attorney Britton, Coleman's own attorney on appeal noted that the record was devoid of any evidence "regarding this issue."  Plaintiff's petition on the basis of a claim of inadequate assistance of counsel should therefore be **DENIED.**

### IV.   Suppression of Evidence

Coleman next argues that the state failed to provide him with discovery prior to trial: "The defense requested to be provided material in an effort to prepare an adequate defense, by way of discovery.  The state knowingly and intentionally suppressed favorable requested material."  Doc. # 1, ¶ 5C.  This claim stems from Coleman's first trial, held on February 15, 2006.  That trial ended in a mistrial at the request of defense counsel, when, according to Judge Waldron, a "police officer, on his own, referred to the defendant's post-arrest silence."  (R. 30). A partial transcript from the proceedings held on February 15, 2006, illustrates the grounds for Coleman's claim:

> By the Court: Mr. Britton, your pleasure, please, sir.

> By Defendant: Your honor, I have some questions about, you know -

> By the Court: No.  I'm not permitting this.  I thought you had something to -

> By Mr. Britton: Well, he has indicated he prefers to make his own motion at this time.  He has said that the -

> By the Court: What is this - on further reflection, I'm going to allow the gentleman to be heard.  Mr.  Coleman, what is it that you wish to say, please?

13

By Defendant: Okay.  On the 6th, the 15th, -- on 6th, the 15th, '05, I filed for a motion to discovery.  Again, on the 7th, the 28th, '05, I filed for a motion to discovery again.  And I -

By the Court: What is it you want to discuss, sir?

By Defendant: Like, whatever, I want to know whatever evidence - what evidence they had against me at the time.  I was told nothing until like about three days ago.  All the evidence that the state has, none of that was disclosed or told to me or nothing like that.  I didn't know what witnesses was coming for me.  I didn't know nothing about no - you know, really they - at the hearing, I was told it wasn't a video.  The state said they didn't know - The video popped up, audio, all this here.  None of this was told to me.  I don't know nothing about it.  It's like I'm in the middle of the trial and I'm blinded by it.

By the Court: Mr. Britton, were you afforded full discovery?

By Mr. Britton: I was provided a copy of the particular discovery in this matter.  We did have a preliminary exam.  The officer did testify there was no video.  We have seen the video.  It does not depict the actual transaction.  I'm not sure if the police officer testifying to it not being a video was as to the transaction or as to not being a video.

By Defendant: That's not discovery.

By Mr. Britton: Okay.  I am provided - there is some -

By the Court: Go ahead, please.  I'm trying to accommodate you, but I'm going to cut you off immediately if you're going to interrupt.

By Defendant: I'm sorry.  I'm sorry, sorry, sorry.

By the Court: I'm not going to allow that of anyone beginning with myself.

By Defendant: I'm sorry.  I'm sorry.

By the Court: That's fine, but I want to let you know where we're coming from.

By Defendant: Forgive me.  I'm sorry.

By the Court: I forgive you immediately, but I'm just not going to tolerate it.

By Defendant: Ok.

By the Court: Forgiveness is not the issue.  Tolerance is.  I'm not going to tolerate

14

it.  Please continue.

By Mr. Britton: Okay.  I have provided Mr. Coleman months ago a copy of the police report concerning the alleged facts of this particular incident.  There are some things in terms of the initial report or some records which we did discuss and I made him a copy of.  He also had concerns about this particular analysis, that it was not provided in discovery in terms of Ms. Rutledge.  And also, the fact that we just received today a copy of the police report as to the informant in this particular case.

By Mr. Pham: I think that's a misstatement, Mr. Britton.

By the Court: Speak up, please.

By Mr. Pham: Your honor, I think that's a misstatement.  I believe that's a rap sheet, not a police report.

By Mr. Britton: A rap sheet.  That's a misstatement on my part.  A rap sheet.

By the Court: That's a rap sheet of the alleged informant?

By Mr. Britton: Yes.

By the Court: That you'll be able to question him about.  Either he or she.  Pardon my ignorance.

By Mr. Britton: He.

By the Court: You'll be allowed to question him on any conditions he has or any pending charges he has or any actions the district attorney or the police have taken on his behalf as it relates to any arrests that are reflected on that document.

By Mr. Britton: Okay.

By the Court: You have my word on that.

By Mr. Britton: Yes.  My client's concern is in terms of the timeliness of it, that we just got it today, and the fact that the video which the officer testified months ago there was none and that he did see a video.  But again, I'd like to make another point.  He said that there was no video.  Okay.  And whether that's interpretation as to the transaction or as to actual video would be -

By the Court: Of the alleged transaction.

By Mr. Britton: Right.  Would be the particular question.  Yes.  He also indicates

15

that there should be other documents that he has not been afforded and he would like to lodge an objection to the discovery presentation of the state in this particular matter.

By the Court: I will note the objection, finding no prejudice at this time and have the jury come back in.  I will note objection completely on behalf of the defendant as to any position he has as to not being formally informed of what he believes he should have been informed of.

(R. 546-49).

Judge Waldron therefore found no evidence that the state had withheld information or discovery from Coleman or his attorney.  (R. 549).  As stated *supra*, on the date the above-excerpted conversation took place, a mistrial was declared for reasons unrelated to the discovery dispute.  Coleman now contends that the state "suppressed favorable evidence...upon request by the defense."  Doc. # 1, ¶ 5C.

Louisiana Code of Criminal Procedure Article 729.5 provides that, "if at any time during the proceedings it is brought to the court's attention that a party has failed to comply" with discovery procedures, the court may issue an order to the noncomplying party to permit the discovery, grant a continuance, order a mistrial upon motion of the opposing party, prohibit the noncomplying party from introducing into evidence discovery not previously disclosed, or "enter such other order, other than dismissal, as may be appropriate."  *State v. Morris*, 28,312 (La. App. 2d. Cir. 8/21/1996) 679 So.2d 482, 484.  However, a state's failure to comply with the discovery procedures does not automatically result in reversal.  *Id.*  "The defendant must show prejudice in order for his conviction to be reversed."  *Id.*  Reversal is warranted "only when there is an abuse of discretion and prejudice is shown."  *Id.*

As illustrated by the hearing excerpted *supra*, Attorney Britton provided Coleman with the police report months before his first trial on February 15, 2006.  Although Coleman complained that he did not receive a copy of the informant's rap sheet until the day of trial,

16

Coleman had plenty of time to review the rap sheet before the second trial started.  It is also unclear how Coleman was prejudiced by the alleged delay in receiving the rap sheet, as Attorney Britton was certainly able to capably cross-examine the informant at trial on February 22, 2006. (R. 387-99).

Further, Coleman's counsel on appeal, Mr. Christopher Aberle, felt that there was no basis to argue that the state failed to comply with discovery procedures.  In a letter to Coleman dated September 11, 2006, Attorney Aberle advised Coleman that he "did not raise an issue regarding discovery because there is nothing in the record regarding this issue.  If counsel had complained at trial about the late disclosure or non-disclosure of discovery materials, then, depending on several additional factors, there *might* have been something to argue."  Doc. # 1-3, Attachment C (emphasis in original).

Coleman has therefore failed to show not only prejudice resulting from the state's alleged failure to comply with discovery procedures, but that the state delayed in providing Coleman discovery to begin with.  It is therefore recommended that plaintiff's *habeas* claim for relief on this ground be **DENIED**.

## V.      Insufficient Evidence to Support a Conviction

Plaintiff argues that his conviction for distribution of cocaine was the result of misidentification.  Doc. # 1-2, p. 11-13.  Plaintiff also argues that evidence introduced by the state at trial - specifically, an audiotape and a videotape - should have been suppressed.  *Id.* Coleman earlier raised this issue in his application for post-conviction relief, which was subsequently denied in the Second Circuit Court of Appeal and Louisiana Supreme Court.  *See State ex rel. Coleman v. State*, 2009-1454 (La. 4/09/2010) 31 So. 3d 384.

A reviewing court will not disturb a state court jury verdict so long as the evidence,

17

viewed in the light most favorable to the verdict, is sufficient to allow a reasonable jury to find

the defendant guilty beyond a reasonable doubt.  *Young v. Guste*, 849 F.2d 970, 972 (5th Cir.

1988); *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781(1979).  It is the jury's

responsibility  "to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Thus, the

federal *habeas* court does not "focus on whether the trier of fact made the correct guilt or

innocence determination, but rather whether it made a <u>rational</u> decision to convict or acquit."

*Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853  (1993).  In so doing, "[a]ll credibility

choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*,

398 F.3d 691, 695 (5th Cir. 2005) (quoted source omitted).  The reviewing court may not

substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775

F.2d 595, 598 (5th Cir. 1985).  In the end, *habeas* relief on a claim of insufficient evidence is

appropriate only when no rational trier of fact could have found petitioner guilty beyond a

reasonable doubt based on the evidence adduced at trial.  *West v. Johnson*, 92 F.3d 1385 (5th Cir.

1996).

The evidence presented in the case *sub judice* was sufficient to sustain petitioner's

conviction.  At trial, Jay Ellerman of Metro Narcotics identified Coleman in open court as the

person involved in the "buy/bust" operation, which took place in Monroe, Louisiana, on January

18, 2005.  (R. 337).  The RCI ("reliable confidential informant") was equipped with an audio

recording device and $60 in photocopied buy money.  (R. 339).  Law enforcement personnel

made a visual recording of the transaction.  (R. 341).  During trial, the State introduced a copy of

the tape that was in the surveillance camera during the operation, which was shown in open court

over the objections of Coleman's attorney.[7]  (R. 348-49).

The RCI made contact with Coleman at the intersection of Eleventh and Adams Streets. (R. 342).  Ellerman testified that he listened to the drug transaction as it was in progress, and that the arrest team was located approximately two to three blocks away from the transaction.  (R. 343).  Ellerman further testified that he heard the RCI verbally state "that's a good deal," which was a sign that the transaction was complete.  *Id.*  Upon receiving the signal, Metro officers arrived and arrested Coleman, who was found standing near the RCI's vehicle.  *Id.*  Prior to his arrest, the officers observed Coleman throw the sixty dollars into the interior of the RCI's vehicle.  *Id.*  A subsequent search of the vehicle revealed  the buy money that had been given to the RCI.  (R. 344).

Detective Mike Rowlan testified that the RCI, H.M. Poole, had worked cases similar to the one at issue "over seven hundred" times.  (R. 373).  The informant also testified at trial and identified Coleman in open court as the person that initially gave Poole one free "rock," and then sold him sixty dollars worth of crack cocaine.  (R. 386).  Poole further testified that when the officers arrived, Coleman threw three (3) twenty dollar bills through the window of Poole's truck.  (R. 387).  The factual findings of the court as illustrated by the testimony described herein are entitled to the presumption of correctness under 28 U.S.C. § 2254(e).

To overcome this presumption, petitioner must rebut these factual findings by clear and convincing evidence.  28 U.S.C. § 2254(e)(2)(B).  However, Coleman has not offered any evidence in support of his claim that his arrest was the result of "misidentification."  Petitioner merely states, in a conclusory manner, that the evidence was insufficient to find him guilty.  Doc.

---

[7] Audiotape of the transaction was also admitted with no objection from Coleman's attorney.  (R. 350). Sergeant Ellerman testified that he recognized the voices of the RCI and Coleman on the audiotape.  *Id.*

# 1-2, p. 28.  Viewed in a light most favorable to the verdict, the evidence was sufficient  to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt of the charged crime.  *Ramirez v. Dretke*, 398 F.3d at 695; *Young v. Guste*, 849 F.2d at 972.

## VI.    Request for an Evidentiary Hearing

Under Rule 8(a) of the *habeas* Court Rules, "the judge must review the answer [and] any transcripts and records of state proceedings...to determine whether an evidentiary hearing is warranted."  In making this determination, a federal court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal *habeas* relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "Because the deferential standards prescribed by § 2254 control whether to grant *habeas* relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  "[I]f the record refutes the applicant's factual allegations or otherwise precludes *habeas* relief, a district court is not required to hold an evidentiary hearing."  *Id.*

As the forgoing discussion indicates, the record demonstrates that none of petitioner's claims have merit.  Accordingly, an evidentiary hearing and the appointment of counsel for the hearing are not warranted.

## CONCLUSION

For the reasons stated above, it is recommended that the petition for writ of *habeas corpus* [doc. # 1] under 28 U.S.C. § 2254 be **DENIED**.  Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall

be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACHING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      THUS DONE AND SIGNED at Monroe, Louisiana, December 14, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE